# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN JAMES RODRIGUEZ,<br><br>Defendant. | Case No. 1:20-cr-00122-JLT-SKO<br><br>ORDER DENYING MOTION TO QUASH WRIT OF CONTINUING GARNISHMENT<br><br>(Doc. 72) |

## I.  INTRODUCTION

Jonathan James Rodriguez, who is serving a term of imprisonment imposed in this case, moves to quash writs of garnishment issued against bank accounts in which he has an interest. (Doc. 72.) He maintains that garnishment of those assets conflicts with the payment schedule adopted by this Court in his criminal judgment. (Doc. 72.) The United States opposes the motion. (Doc. 74.) Mr. Rodriguez replied. (Doc. 75.) A hearing was held on April 28, 2025. For the reasons set forth below, the motion is **DENIED**.

## II.  BACKGROUND

On July 30, 2020, Mr. Rodriguez was charged in a single-count indictment with receipt and distribution of material involving the sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(2). (Doc. 1; *see also* Doc. 20 (superseding indictment).) Mr. Rodriguez executed a plea agreement on August 17, 2022, in which he agreed to plead guilty to the single § 2252(a)(2) count

and acknowledged that the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A, required the Court to order restitution to the victims of his offense. (Doc. 42 at 3.) He further specifically agreed that:

> Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court, and defendant shall make payment of restitution in full within ninety (90) days of the entry of judgment.
>
> Defendant agrees that all criminal monetary penalties imposed by the court, including restitution, will be due in full immediately at time of sentencing and subject to immediate enforcement by the government. Defendant agrees that any payment schedule or plan set by the court is merely a minimum and does not foreclose the United States from collecting all criminal monetary penalties at any time through all available means.

(*Id.*) Mr. Rodriguez also agreed that the Justice for Victims of Trafficking Act mandated imposition of an additional assessment of $5,000. (*Id.* at 4.) "If ordered, the defendant agree[d] to pay [the JVTA Assessment] in full within ninety (90) days of entry of the judgment." (*Id.*) The government agreed to recommend that the defendant be sentenced to a term of imprisonment of no more than 180 months, so long as Mr. Rodriguez did not recommend a sentence below 120 months. (*Id.* at 7, 9.) The Court accepted and entered Mr. Rodriguez's guilty plea on September 23, 2022. (Doc. 45.)

As detailed in the Presentence Report, at the time of sentencing Mr. Rodriguez held Wells Fargo checking and savings accounts jointly with his mother totaling approximately $16,000.00 as well as two retirement accounts in his own name totaling approximately $29,000.00. (Doc. 49 at 16.)[1] The PSR recommended that the Court impose restitution in the amount of $149,816.27, a $5,000.00 JVTA assessment, and a $100.00 special assessment. (Doc. 49-5 at 1.) Though his net worth was positive at that time, given that a lengthy sentence and significant restitution would likely be imposed, the PSR recommended that the Court find Mr. Rodriguez unable to pay fine in addition to restitution. (*Id.* at 17.)

Mr. Rodriguez was sentenced to 170 months incarceration, followed by 15 years of supervised release. (Doc. 67 (Amended Judgment and Commitment).) He also was ordered to pay

---

[1] The government's opposition reflects that these accounts have increased in value somewhat in the months following sentencing. (*See* Doc. 74 at 2 & n.1.)

a $100.00 special assessment, a $5,000.00 JVTA assessment, and, after a separate restitution hearing (Doc. 66), $22,500.00 in restitution to four minor victims. (Doc. 67.) The Court's Judgment provided that "[p]ayment [is] to begin immediately" and that:

> If incarcerated, payment of any unpaid criminal monetary penalties in this case is due during imprisonment at the rate of 10% of the defendant's gross income per month or $25 per quarter, whichever is greater. Payment shall be made through the Bureau of Prisons Inmate Financial Responsibility Program.
>
> The defendant shall make payments toward any unpaid criminal monetary penalties in this case during supervision at the rate of at least 10% of your gross monthly income. Payments are to commence no later than 60 days from placement on supervision. This payment schedule does not prohibit the United States from collecting through all available means any unpaid criminal monetary penalties at any time, as prescribed by law.

(*Id*. at 8.)

According to the government's filings, as of August 2024, Defendant had paid only $200 toward victim restitution. (Doc. 74 at 2.) Starting in July 2024, the government requested and obtained writs of garnishment from the Clerk of Court against bank accounts in which Mr. Rodriguez holds an interest. *See* 1:24-mc-00021-SKO, Doc. 3 (regarding bank accounts held at Wells Fargo); 1:24-mc-00085-JL-EPG, Doc. 2 (concerning a retirement account). Pursuant to those writs, the subject accounts remain frozen until the Court issues orders directing the property's disposition. (*Id*.)

### III. DISCUSSION

Mr. Rodriguez asks the Court to recall or quash the writs of garnishment, arguing that the government omitted material information from its application to the Clerk of Court for those writs. (*See* Doc. 72 at 3.) Specifically, Mr. Rodriguez contends that the government should have disclosed in its writ applications this Court's imposition of a payment schedule and relatedly that the appropriate procedure would have been for the government to petition the Court to modify the restitution schedule pursuant to 18 U.S.C. § 3572(d)(3) and 3664(k). (Doc. 72 at 3.)

The government maintains that it is entitled to act on the terms of the plea agreement, in which Mr. Rodriguez agreed to pay restitution and the JVTA assessment within 90 days of entry of judgment; (2) that the Criminal Debt was subject to immediate enforcement by the United

1  States; and (3) that any payment schedule set by the Court was merely a minimum and did not
2  foreclose the United States from collecting the Criminal Debt any time by all available means.
3  (*See* Doc 72 at 3 (citing Doc. 42).)

4  Mr. Rodriguez insists that even though he agreed in his plea agreement "that any payment
5  schedule or plan set by the court is merely a minimum and does not foreclose the United States
6  from collecting all criminal monetary penalties at any time through all available means," the
7  "available means" at the government's disposal to collect on the Criminal Debt are limited by the
8  Court's judgment, which was in turn entered pursuant to statute: 18 U.S.C. § 3664.[2] (Doc. 75 at
9  1.) To the extent that Mr. Rodriguez makes this argument simply to demonstrate that the Court is
10 not bound by the plea agreement's terms, the Court agrees. The plea agreement says as much.
11 (*See* Doc. 42 at 2 ("Court Not a Party").)[3] But whether the government's garnishment activities
12 conflict with the judgment is a separate question.

13 In support of his position, Mr. Rodriguez alludes to (without citing directly) a line of cases
14 addressing whether garnishments conflict with payment schedules set forth in criminal
15 judgments. (Doc. 72 at 3 (arguing that "[h]ere, the Court did not order that restitution was '*due*
16 *immediately*', and did not make the requisite finding that Mr. Rodriguez had the ability to pay
17 said restitution immediately, but instead set a payment schedule pursuant to 18 U.S.C. 3664(f)
18 [and] *United States v. Holden*, 908 F.3d 395, 403–404 (9th Cir. 2018)) (emphasis added).)
19 Though the Ninth Circuit does not appear to have addressed the issue, other courts have "almost
20 uniformly recognized a 'crucial distinction' between cases . . . in which the court orders the
21 defendant to pay only through a payment schedule with no requirement of immediate payment in
22 full, and cases . . . in which the judgment specifies that the amount owed is due in full on the date

---

[2] 18 U.S.C. § 3664 sets forth the procedures applicable to the issuance and enforcement of an order of restitution. As provided therein, a court must consider a defendant's financial resources and other assets prior to imposing an order of restitution. *Id*. § 3664(f)(2). Defendant nowhere suggests that the Court failed to abide by § 3664 in this case.

[3] Citing cases concerning the enforcement of waivers contained in plea agreements (Doc. 74 at 4), the government appears to be asking the Court to interpret and then enforce the payment terms of its plea agreement with Mr. Rodriguez. Even if the government is correct that the terms of the plea agreement are clear and required full payment of the restitution amount within 90 days of entry of judgment, the government fails to explain why the Court should affirmatively enforce the terms of that agreement if those terms conflict with the Court's judgment, particularly given that the plea agreement indicates the Court is not a party to it.

4

of judgment, regardless of whether the judgment includes a back-up schedule of payments to cover any unpaid amounts." *United States v. Williams*, 898 F.3d 1052, 1055 (10th Cir. 2018) (comparing *United States v. Martinez*, 812 F.3d 1200, 1202–08 (10th Cir. 2015) (prohibiting garnishment beyond the amount due under the defendant's installment schedule because the restitution order specifically declined to create an immediately enforceable debt for the full restitution amount), with *United States v. Behrens*, 656 F. App'x 789, 790 (8th Cir. 2016) (permitting garnishment despite fact that defendant was not in default of the payment schedule set forth in criminal judgment, finding "the payment schedule set forth in the judgment did not preclude the [] garnishment, because the judgment specified that the amount owed was due in full on the date of judgment; and notably, the judgment imposed the obligation to make installment payments without limiting the government's ability to institute civil collections proceedings"), and *United States v. Shusterman*, 331 F. App'x 994, 996–97 (3d Cir. 2009) (garnishment beyond installment schedule not improper in part because judgment provided that restitution "is due immediately")).[4] "In the latter scenario, the schedule of payments does not bar the Government's ability to institute civil collections proceedings." *See United States v. Sam*, No. 2:23-MC-00074-LK, 2024 WL 519564, at *2 (W.D. Wash. Feb. 9, 2024) (allowing garnishment beyond installment schedule where box checked in criminal judgment requiring that monetary penalties were "due immediately"); *see also United States v. Christensen*, No. CR-14-08164-PCT-DGC, 2020 WL 6290488, at *3 (D. Ariz. Oct. 27, 2020), aff'd, 845 F. App'x 635 (9th Cir. 2021)(garnishment beyond scheduled payments permitted where criminal judgment made restitution amount "due immediately" and the judgment provided that monthly payments "do not preclude the government from using any other anticipated or unexpected financial gains, assets, or income of [D]efendant to satisfy the restitution obligations").

---

[4] Yet another line of cases originated with the Fifth Circuit's brief decision in *United States v. Ekong*, 518 F.3d 285, 286 (5th Cir. 2007), which held that the government may pursue immediate enforcement of a restitution judgment despite provision in the criminal judgment specifying installment payments. *See, e.g., United States v. Skeins*, No. C14-1457JLR, 2014 WL 5324880, at *3 (W.D. Wash. Oct. 17, 2014) (following *Ekong* to permit garnishment despite compliance with restitution schedule). These cases do not discuss the language in the criminal judgments in any detail, however. Rather, *Ekong* generally emphasized that the MVRA requires the Attorney General to enforce victim restitution orders "aggressively" while noting there was "nothing in the criminal judgment to the contrary." *Ekong*, 518 F.3d at 286. The Court finds these authorities too thinly reasoned to be very helpful.

Other cases, such as *United States v. Villongco*, No. CR 07-009 (BAH), 2016 WL 3747508, at *9 (D.D.C. July 11, 2016), take a different approach, concluding that garnishment beyond the payment schedule should be prohibited even where the criminal judgment makes restitution "immediately payable." As that court explained:

> The D.C. Circuit in *Hughes* confronted similar language, in combination with the order for installment restitution payments, and discounted this portion of the restitution order as merely "boilerplate language." [*United States v.*] *Hughes*, 813 F.3d [1007,] 1009 [(D.C. Cir. 2016)]. Other courts have similarly given effect to the specific payment schedule provided in a restitution order, notwithstanding inclusion in the order of language that restitution was "payable immediately." *See, e.g.,* [*United States v.*] *Scales*, 2016 U.S. App. LEXIS 5179, at *8, 2016 WL 1072133 [(5th Cir. Mar. 17, 2016)]. ("Whatever the phrase 'payable immediately' means, its effect is limited by the requirement that the manner in which restitution is to be paid must be consistent with a defendant's ability to pay."); *United States v. Grigsby*, No. 12-10174, 2016 U.S. Dist. LEXIS 34170, 2016 WL 1056560 (D. Kan. March 16, 2016) (order that "payment begin immediately" authorizes only the monthly payment schedule); accord *United States v. Pascucci*, No. 98 cr. 278, 2009 U.S. Dist. LEXIS 52152, at *8–9 n.4, 2009 WL 1726341 (S.D.N.Y. June 18, 2009) (finding that when collecting restitution, the government must "bill the [defendant] in conformity with the court-approved schedule"). In short, the government's reliance on the "immediately payable" language to support the instant garnishment action, absent any default by the defendant on his payment schedule, is misplaced.

*Villongco*, 2016 WL 3747508, at *9.

It is challenging to draw clear rules from any of these cases because the language in the various form judgments involved varies. For example, the judgment in *Sam*, Case No. 2:23-mc-00074-LK (W.D. Wash), Document 8-1, provided a check box to make "PAYMENT [] DUE IMMEDIATELY." In contrast, the form used by this Court at the time of Mr. Rodriguez's sentencing offers the following options:

A. [ ]  Lump sum payment of ___ $ due immediately, balance due
      [ ]    Not later than ____ , or
      [ ]    in accordance    [ ]C,   [ ]D,   [ ] E, or  [ ]F below; or

B. [ ]  Payment to *begin* immediately (may be combined with [ ]C, [ ]D, or [ ]F below); or

C. [ ]  Payment in equal (e.g. weekly, monthly, quarterly) installments of ____$ over a period of (e.g. months or years), to commence (e.g. 30 or 60 days) after the date of this judgment; or

D. [ ]  Payment in equal (e.g. weekly, monthly, quarterly) installments of $ over a period of (e.g. months or years), to commence (e.g. 30 or 60 days) after release from imprisonment to a term of

|   |   |   |
|---|---|---|
| | | supervision; or |
| | E. [ ] | Payment during the term of supervised release/probation will commence within (e.g. 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or |
| | F. [ ] | Special instructions regarding the payment of criminal monetary penalties: |

(*See* Doc. 67 at 8 (emphasis added).) In this matter, the Court selected option "B" combined with "F":

> B. [✓]   Payment to begin immediately (may be combined with [ ]C, [ ]D, or [✓]F below); or

Section F in turn provides the following detailed, narrative instructions:

> If incarcerated, payment of any unpaid criminal monetary penalties in this case is due during imprisonment at the rate of 10% of the defendant's gross income per month or $25 per quarter, whichever is greater. Payment shall be made through the Bureau of Prisons Inmate Financial Responsibility Program.
>
> The defendant shall make payments toward any unpaid criminal monetary penalties in this case during supervision at the rate of at least 10% of your gross monthly income. Payments are to commence no later than 60 days from placement on supervision. This payment schedule does not prohibit the United States from collecting through all available means any unpaid criminal monetary penalties at any time, as prescribed by law.

(*Id*. at 8.)

    In the absence of any clearly analogous and/or binding authority, this Court turns to the general principle that it has considerable leeway to interpret its own orders. *See Steinberger v. Ocwen Loan Servicing, LLC*, 739 F. App'x 881, 884 (9th Cir. 2018) (district court interpretation of its own orders entitled to deference "absent a definite and firm conviction that the district court made a clear error of judgment"). Because Mr. Rodriguez is incarcerated, he is currently obligated to pay "any unpaid criminal monetary penalties. . . at the rate of 10% of the defendant's gross income per month or $25 per quarter, whichever is greater . . . through the Bureau of Prisons Inmate Financial Responsibility Program" (Doc. 67 at 8.) However, the next paragraph of the judgment provides that

> The defendant shall make payments toward any unpaid criminal monetary penalties in this case during supervision at the rate of at least 10% of your gross monthly income. Payments are to commence

7

> no later than 60 days from placement on supervision. *This payment schedule does not prohibit the United States from collecting through all available means any unpaid criminal monetary penalties at any time, as prescribed by law.*

(*Id*. at 8 (emphasis added).) Though the emphasized final sentence is appended to a paragraph that primarily concerns minimum payments due during supervision, the plain language of the last sentence is not limited to the term of supervision, as it permits collection "through all available means any unpaid criminal monetary penalties *at any time*, as prescribed by law." When both payment schedule paragraphs are read together, it becomes apparent that the first paragraph was directed at the level of payments to be required through the IFRP, but did not preclude garnishment of other assets during incarceration as permitted by the last sentence of the second paragraph.

Moreover, though the form language at Paragraph B reads, "payments shall *begin* immediately" instead of "payments are due immediately" or that the debt is "due in full immediately," Paragraph B must be read in context alongside Section "F," which effectively acts as a savings clause, permitting the kinds of garnishments the government currently is pursuing. The last sentence of Section F also distinguishes this case sufficiently from *Villongco*, where no such savings language was included in the judgment. *See United States v. Villongco*, Case. No. 1:07-cr-00009-BAH-1 (D.D.C.), Doc. 33 (Judgment filed Mar. 18, 2008).

Finally, this conclusion is also consistent with the purpose of the MVRA, which "rests on the recognition that '[i]t is essential that the criminal justice system recognize the impact that crime has on the victim, and, to the extent possible, ensure that [the] offender be held accountable to repay these costs.'" *United States v. Novak*, 476 F.3d 1041, 1043 (9th Cir. 2007) (quoting S. Rep. No. 104-179, at 18 (1995)). "To ensure that accountability, [18 U.S.C.] § 3613(a), consolidated and strengthened the procedures available to the government for collecting unpaid restitution." *United States v. Swenson*, 971 F.3d 977, 982 (9th Cir. 2020) (citing *In re Partida*, 862 F.3d 909, 913 (9th Cir. 2017)). Section 3613(a) states:

> The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any

8

> other Federal law[,] . . . a judgment imposing a fine may be enforced against all property or rights to property of the person fined[.]

This language was intended to "broaden the government's collection powers to reach all of a defendant's assets." *Swensen*, 971 F.3d at 983.

## IV.   CONCLUSION AND ORDER

For the reasons set forth above, the motion to quash the writs of garnishment is **DENIED**.

IT IS SO ORDERED.

Dated:   **April 29, 2025**

_____
UNITED STATES DISTRICT JUDGE